UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

WILLIAM ROGER DEAN,                          :

            Plaintiff,                    :

       -against-                             :

JAMES CAMERON, TWENTIETH           :   13-cv-4479
CENTURY FOX FILM CORPORATION,
TWENTIETH CENTURY FOX HOME        :   Furman, J.
ENTERTAINMENT and LIGHTSTORM
ENTERTAINMENT,                                    :

           Defendants.                 :

                               :

------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

LOEB & LOEB LLP
Jonathan Zavin
Jonathan Neil Strauss
Michael Barnett
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 3

    A.    Avatar ........................................................................................................... 3

        1.    Brief Summary of the Film's Plot ........................................................ 3

        2.    The Pandoran Landscape and Biosphere ............................................. 5

    B.    Plaintiff's Allegations and Works .............................................................. 6

ARGUMENT .................................................................................................................... 7

    PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS MUST BE
    DISMISSED BECAUSE THERE IS NO SUBSTANTIAL SIMILARITY
    BETWEEN *AVATAR* AND THE COPYRIGHTABLE ELEMENTS OF
    PLAINTIFF'S WORKS ........................................................................................ 7

    A.    The Court Can Properly Compare the Subject Works and Determine Lack
        of Substantial Similarity as a Matter of Law on a Motion to Dismiss ............... 7

    B.    The "Substantial Similarity" Test .............................................................. 8

    C.    There is No Substantial Similarity Between *Avatar* and the Copyrightable
        Elements of the Paintings Identified by Plaintiff ............................................. 10

        1.    There is No Legally Cognizable Similarity Between *Avatar*'s
            Hallelujah Mountains and Plaintiff's "Floating Islands" ...................... 11

            a.    Any Similarities Result From an Unprotectable Shared
                Concept ...................................................................................... 11

            b.    Courts Regularly Reject Infringement Claims Where
                Similarities Between Images Are Significant, Yet Non-
                Protectable ................................................................................. 15

        2.    There is No Substantial Similarity Between *Avatar* and Plaintiff's
            Paintings Featuring Stone Arches ........................................................ 18

        3.    There Are No Protectable Similarities Between *Avatar's* Hometree
            and Plaintiff's "Pathways" .................................................................. 20

        4.    There Is No Similarity Between the *Avatar*'s Tree of Souls or Tree
            of Voices and Plaintiff's "Floating Jungle" .......................................... 22

5.    There are No Similarities Between *Avatar*'s Fantastic and Original Alien Life Forms and the Remaining Paintings Identified by Plaintiff .......................................................................................... 22

        a.    There is No Protectable Similarity Between "Morning Dragon" and *Avatar*'s Banshees ................................................. 23

        b.    "Magician's Birthday" Does Not Resemble Any Aspect of *Avatar* ........................................................................................ 24

        c.    Plaintiff's Artworks Depicting Real-Life Lizards and Dragonflies Do Not Resemble *Avatar*'s Alien Wildlife ............ 25

CONCLUSION ............................................................................................................. 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agence France Presse v. Morel*,
 769 F. Supp. 2d 295 (S.D.N.Y. 2011) ................................................................. 3

*Alexander v. Murdoch*,
 502 F. App'x 107 (2d Cir. 2012), *cert. denied*, --U.S.--, 133 S. Ct. 2812 (2013).................... 8

*Attia v. Soc'y of the New York Hosp.*,
 201 F.3d 50 (2d Cir. 1999) ................................................................................ 9

*Belair v. MGA Entm't, Inc.*,
 503 F. App'x 65 (2d Cir. 2012) .................................................................... 13, 17

*Belair v. MGA Entm't, Inc.*,
 831 F. Supp. 2d 687 (S.D.N.Y. 2011), *aff'd*, 503 F. App'x 65 (2d Cir. 2012) ................ 16, 17

*Bill Diodato Photography, LLC v. Kate Spade, LLC*,
 388 F. Supp. 2d 382 (S.D.N.Y. 2005) ............................................................. 9, 17

*Cabell v. Sony Pictures Entm't, Inc.*,
 425 F. App'x 42 (2d Cir. 2011), *cert. denied*, --U.S.--, 132 S. Ct. 1797 (2012).............. 11, 25

*Chambers v. Time Warner, Inc.*,
 282 F.3d 147 (2d Cir. 2002) ............................................................................. 3

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
 982 F.2d 693 (2d Cir. 1992) ............................................................................. 9

*DiTocco v. Riordan*,
 496 F. App'x 126 (2d Cir. 2012) ..................................................................... 7-8

*DiTocco v. Riordan*,
 815 F. Supp. 2d 655 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 126 (2d Cir. 2012) ................ 8, 12

*Durham Indus. v. Tomy Corp.*,
 630 F.2d 905 (2d Cir. 1980) .......................................................................... 11-12

*Eden Toys, Inc. v. Marshall Field & Co.*,
 675 F.2d 498 (2d Cir. 1982) ....................................................................... 11, 21

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991) ........................................................................................ 7

*Folio Impressions, Inc. v. Byer California,*
    937 F.2d 759 (2d Cir. 1991) ................................................................. 15

*Gaiman v. McFarlane,*
    360 F.3d 644 (7th Cir. 2004) ............................................................... 23

*Gordon v. McGinley,*
    502 F. App'x 89 (2d Cir. 2012), *cert. denied*, --U.S.--, 133 S. Ct. 2742 (2013) .......... 7, 13, 17

*Gordon v. McGinley,*
    No. 11 Civ. 1001 (RJS), 2011 U.S. Dist. LEXIS 92470 (S.D.N.Y. Aug. 18, 2011),
    *aff'd* 503 F. App'x 65 (2d Cir. 2012) .................................................. 14

*Gottlieb Dev. LLC v. Paramount Pictures Corp.,*
    590 F. Supp. 2d 625 (S.D.N.Y. 2008) ..................................................... 3

*Great Importations, Inc. v. Caffco Int'l, Inc.,*
    No. 95 Civ. 0514, 1997 U.S. Dist. LEXIS 10700 (S.D.N.Y. Jul. 24, 1997) ................ 12

*Gund, Inc. v. Smile Int'l, Inc.,*
    691 F. Supp. 642 (E.D.N.Y. 1988), *aff'd*, 872 F.2d 1021 (2d Cir. 1989) .............. 12

*Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.,*
    378 F. Supp. 485 (S.D.N.Y. 1974), *aff'd*, 509 F.2d 64 (2d Cir. 1974) .............. 9, 18

*Hogan v. DC Comics,*
    48 F. Supp. 2d 298 (S.D.N.Y. 1999) ................................................... 12

*Kaplan v. Stock Market Photo Agency, Inc.,*
    133 F. Supp. 2d 317 (S.D.N.Y. 2001) ................................................ 9, 17

*Kerr v. New Yorker Magazine, Inc.,*
    63 F. Supp. 2d 320 (S.D.N.Y. 1999) ................................................... 12

*Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.,*
    945 F.2d 509 (2d Cir. 1991) ............................................................. 8

*Kroencke v. Gen. Motors Corp.,*
    270 F. Supp. 2d 441 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 339 (2d Cir. 2004) ........ 10

*Lewinson v. Henry Holt & Co., LLC,*
    659 F. Supp. 2d 547 (S.D.N.Y. 2009) .................................................... 7

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.,*
    292 F. Supp. 2d 535 (S.D.N.Y. 2003) ................................................... 23

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.,*
    724 F.2d 357 (2d Cir. 1983) ....................................................... 15-16, 25

iv

*Nat'l Comics Publ'ns, Inc. v. Fawcett Publ'ns, Inc.*,
  198 F.2d 927 (2d Cir. 1952) ........................................................................... 10

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ..................................................................... *passim*

*Porto v. Guirgis*,
  659 F. Supp. 2d 597 (S.D.N.Y. 2009) .............................................................. 12

*Psihoyos v. Nat'l Geographic Soc'y*,
  409 F. Supp. 2d 268 (S.D.N.Y. 2005) .......................................................... 9, 18

*Queenie, Ltd. v. Sears, Roebuck & Co.*,
  124 F. Supp. 2d 178 (S.D.N.Y. 2000) .............................................................. 21

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2004) ................................................... 9, 15, 17, 18

*Silberstein v. Fox Entm't Grp., Inc.*,
  424 F. Supp. 2d 616 (S.D.N.Y. 2004), *aff'd sub nom.*,
  *Silberstein v. John Does 1-20*, 242 F. App'x 720 (2d Cir. 2007) ........................ 11, 14, 17, 24

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986) ............................................................................. 8

*Warner Bros., Inc. v. Am. Broad. Cos.*,
  720 F.2d 231 (2d Cir. 1983) ........................................................................... 10

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
  210 F. Supp. 2d 147 (E.D.N.Y. 2002), *aff'd*, 354 F.3d 112 (2d Cir. 2003) ............... 14-15

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996) ................................................................. 9, 10, 11

**Statutes**

17 U.S.C. § 102(b) ......................................................................................... 9

Defendants James Cameron, Twentieth Century Fox Film Corporation ("Fox"), Twentieth Century Fox Home Entertainment and Lightstorm Entertainment, Inc. (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss plaintiff William Roger Dean's ("Plaintiff") Amended Complaint for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

In 2009 Fox released the epic science fiction film *Avatar*, written and directed by the visionary filmmaker James Cameron, which quickly became the highest grossing film of all time. *Avatar*, set in the year 2154, tells the story of a conflict between human mercenaries and an alien race called the Na'vi on the fictional world of Pandora.  Widely viewed as a technically revolutionary motion picture, using groundbreaking advances in motion capture filming techniques, visual effects and 3-D technology, *Avatar* depicts a fully-realized cinematic world presented on a massive scale, made up of hundreds of thousands of individual frames and thousands of separate visual effects shots.

Plaintiff now claims that this cinematic world infringes his copyrights in fourteen paintings, but does not even attempt to explain which specific elements of *Avatar* are purportedly infringing. In any case, when Plaintiff's paintings are actually compared with the relevant scenes from *Avatar*, it is clear that any "similarities" involve only nonprotectable ideas and *scènes à faire* flowing therefrom.  For example, Plaintiff claims that *Avatar* infringes his painting "Floating Islands" and similar works, apparently due to levitating "Hallelujah Mountains" featured in Pandora's landscape. However, any similarities derive from the nonprotectable concept of hovering land masses: the parties' respective expressions of that concept are quite different.  Plaintiff also claims that Avatar infringes various paintings featuring stone arches (which Plaintiff himself acknowledges are based on real-life rock formations).  However, the stone arches that appear in screen in *Avatar* have

nothing in common with Plaintiff's paintings other than the fact that they both, on the most general level, depict different expressions of curved rock formations that are nonprotectable, which appear in nature, and are in the public domain.

The other paintings identified in the Amended Complaint also bear no resemblance, protectable or otherwise, to any elements in the film. For example, it is only by reference to Plaintiff's original complaint that one can even discern that Plaintiff believes his "Floating Jungle" and "Pathways" paintings are infringed by *Avatar*'s (i) Tree of Voices and Tree of Souls, and (ii) Hometree, respectively. But there is simply no substantial similarity between *Avatar*'s Tree of Voices and Tree of Souls, which are both willow-like trees, with long, thin, hanging bioluminescent tendrils (through which the Na'vi can neurologically connect to their environs) and Plaintiff's "Floating Jungle" painting of floating plants under a thick, heavy layer of dropping green moss; nor is there any substantial similarity between *Avatar*'s gigantic Hometree, in which the Na'vi live, and the stone structures in Plaintiff's "Pathways" painting. There is also no conceivable substantial similarity between *Avatar*'s wholly original three dimensional moving alien life forms and the remaining artworks listed in the Amended Complaint, which range from pictures of ordinary lizards and insects to a man in a stereotypical fighting pose. Courts in this Circuit routinely dismiss infringement claims involving images and graphic works that are far more similar than those at issue here.

The Second Circuit has repeatedly and expressly stated that copyright claims can, and should, be dismissed at the pleading stage "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63, 69 (2d Cir. 2010) (internal quotation omitted). The Second Circuit has also repeatedly stated that, in deciding such a motion to dismiss, a

court should review and compare the subject works as documents incorporated by reference and integral to the complaint, and should not assume the truths of allegations of similarities between the works.  Here, when this comparison is done, there can be only one conclusion:  There is no protectable similarity between *Avatar* and any of Plaintiff's paintings, and Plaintiff's infringement claims must be dismissed as a matter of law.

## STATEMENT OF FACTS

The facts set forth herein are taken from the Amended Complaint (the allegations of which are presumed to be true solely for purposes of this motion), and from documents incorporated by reference therein, including the film *Avatar* and Plaintiff's paintings.[1]

A. ***Avatar***

### 1.  Brief Summary of the Film's Plot

*Avatar* is set in 2154 A.D. on the fictional world Pandora, a densely forested moon orbiting a giant gas planet light years away from Earth.  The film tells the story of a conflict between (i) human mercenaries who work for the Resources Development Administration ("RDA"),  a corporation that mines for a valuable mineral and energy source called "unobtanium," and (ii) the Na'vi, 10-foot tall, blue-skinned humanoids with catlike features, who are the indigenous species of Pandora.  The "avatars" of the film's title are genetically-engineered hybrid bodies that look like Na'vi but are controlled by genetically-matched humans via a mental link.  Because Pandora's atmosphere is poisonous to humans, scientists use avatars to explore the planet and interact with the Na'vi.

---

[1] On a motion to dismiss a copyright infringement claim based on lack of substantial similarity, the Court may consider documents attached to the Complaint or incorporated in it by reference, as well as documents "integral" to the Complaint and relied on in it.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 302 (S.D.N.Y. 2011); *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 629-30 n.1 (S.D.N.Y. 2008).  Accordingly, the works incorporated in the complaint by reference, or integral to the complaint, are annexed as exhibits to the accompanying declaration of Jonathan Zavin.

The film's protagonist is Jake Sully, a paraplegic ex-marine selected to operate the DNA-specific avatar of his late twin-brother, a scientist and linguist in the avatar program.  (Zavin Decl. Ex. A ("*Avatar*") at 1:00:00-1:03:20; 1:07:56-1:11:40).[2]  While exploring the forest in his avatar form, Jake becomes separated from his colleagues, and is later rescued by a female Na'vi named Neytiri.  Neytiri takes Jake to her clan's home in a gigantic tree, known as Hometree, where she is ordered to initiate Jake into their society.  (*Id.* at 1:27:50-1:47:16).

When Jake's avatar body goes to sleep he awakes in his human form, at the RDA's military base.  There, Colonel Miles Quaritch, head of the RDA's mercenary force and Parker Selfridge, the RDA's corporate administrator, inform Jake that the Na'vi Hometree sits atop a huge deposit of unobtanium.  They give him three months to convince the Na'vi to leave Hometree voluntarily, or else the RDA will take it by force.  For  a time Jake lives a dual life, training with the Na'vi in his avatar form, and reporting to Quaritch and Selfridge when he is in his human form.  (*Id.* at 1:48:30-1:54:28).  Ultimately, however, Jake falls in love with Neytiri and  transfers his allegiance to the Na'vi, attacking an RDA bulldozer that has destroyed the Tree of Voices, a sacred Na'vi site.  (*Id.* at 2:21:30-2:28:13).  RDA mercenaries subsequently destroy Hometree in an aerial military attack, after which the clan retreats to the sacred Tree of Souls.  (*Id.* at 2:34:45-2:53:16).

In a climactic final battle, Na'vi warriors flying on banshees (large, airborne creatures that the Na'vi connect to via a neural interface) attack RDA airships amidst Pandora's floating Hallelujah Mountains.  After the battle transfers to the ground, the tide turns in the Na'vi's favor when Pandoran wildlife join the fray and overwhelm the humans both on the ground and in the air. The Na'vi win the battle, Quaritch is killed, and all humans (with the exception of Jake and a few other scientists) are expelled from Pandora, after which Jake is transferred permanently into his avatar form at the Tree of Souls.  (*Id.* at 3:09:52-end).

---

[2] Time references in the *Avatar* citations are to the time code appearing in the upper right hand corner of the screen of Zavin Ex. A.

### 2.  **The Pandoran Landscape and Biosphere**

*Avatar*'s "Pandora" is filled with colorful and lush tropical rainforests and rich with biodiversity, including a fully envisioned ecosystem of (often bioluminescent) plant and animal life. The landscapes, fauna and flora of Pandora are simultaneously fantastic yet realistically-rendered based on what appears in nature and grounded in scientific feasibility.

The following briefly summarizes the features of Pandora's landscape and ecosystem that, as best can be determined, are the subjects of Plaintiff's claims:

- *The Hallelujah Mountains:*  Pandora's Hallelujah Mountains are enormous levitating mountains, overgrown with the same foliage that covers Pandora's forests.  The mountains contain significant quantities of the superconductive mineral unobtainium, allowing them to float over Pandora's strong magnetic fields.  (*See, e.g., Avatar* at 1:54:35-1:56:13).  The mountains resemble real-life karst rock formations throughout the world, including China.  (Zavin Decl. ¶ 8, Ex. G);

- *Stone Arches:*  Pandora's landscape also includes large stone arches, up to many hundreds of feet tall and more than a thousand feet wide, which surround the sacred Tree of Souls.  (*See, e.g., Avatar* at 2:14:18-2:14:40, 2:52:46-2:53:02, 3:05:04-3:05:25, 3:19:30-3:19:36);

- *Hometree*:  Hometree is a gigantic tree hundreds of feet tall, which houses Neytiri's Na'vi clan.  It has an internal, spiral-like "core structure" which acts as a natural staircase.  Clan members reside and sleep in its natural hollows and alcoves.  (*See, e.g., id.* at 1:43:28-1:48:30, 1:53:58-1:54:26);

- *Tree of Voices and Tree of Souls*:  The Tree of Voices and the Tree of Souls are large willow-like trees, sacred to the Na'vi, with bioluminescent hanging tendrils.  These tendrils, which resemble fiber-optic cables, are not simply decorative; through them, the Na'vi can connect to the trees neurologically, transferring electrochemical signals which allow the Na'vi to upload and download data such as thoughts and memories.  (*See, e.g., id.* at 2:04:02-2:04:18, 2:14:37-2:14:48, 2:21:30-2:23:00, 2:31:48-2:33:00, 2:58:31-3:01:00, 3:08:05-3:09:52);

- *Pandoran Wildlife*:  Pandora teems with colorful alien wildlife of all shapes and sizes, including banshees, large flying creatures used by the Na'vi for hunting from air, aerial battles and traveling large distances (*id.* at 1:58:13-1:59:50, 2:11:30-2:12:25); huge, stampeding hammerheaded creatures (*id.* at 1:27:46-1:28:45); fearsome predators called "thanators" (*id.* at 1:28:45-1:31:25); wolf-like predators (*id.* at 1:34:10-1:36:17); six-legged horse-like creatures (*id.* at 1:42:26-1:43:22, 1:51:48-1:53:19); and woodsprites, small, bioluminescent jelly-fish like creatures (*id.* at 1:40:30-1:41:50).  Many of these animals have long,

thin neural antennae, through which the Na'vi can neurologically connect to the animals using their "queues," the braid-like neural extensions protruding from the back of their heads. (*See, e.g., id.* at 1:51:48-1:53:19, 1:58:15-1:59:10, 2:56:20-2:56:20, 3:03:32-3:03:35).

B. **Plaintiff's Allegations and Works**

Plaintiff's Amended Complaint alleges that Defendants infringed "elements of the original images created by Plaintiff." (Am. Compl. ¶ 1). While Plaintiff identifies fourteen paintings that are allegedly infringed by *Avatar* (*id.* ¶ 21), the Amended Complaint does not explain which elements of *Avatar* are purportedly infringing. As best can be discerned, by reference to the original Complaint, Plaintiff claims that certain of his paintings are infringed by the following features of Pandora's landscape and biosphere: "floating mountains," "stone arches," "Hometree," and something that Plaintiff refers to as the "Tree of Life," which appears to be a misnomered reference to *Avatar*'s "Tree of Voices" and/or "Tree of Souls" (which are actually two separate trees). (*See* Compl. (Docket No. 1) ¶ 23(a), (b), (c)). Plaintiff also apparently claims that his artwork featuring various real and imagined life forms (Am. Compl. ¶ 21(k-n)) is infringed by unspecified elements of the Pandoran wildlife appearing in *Avatar*.

Plaintiff claims that the fourteen paintings at issue, and other artworks, were previously compiled, along with various other works, in three books published between 1975 and 2008 (the latter well after production on *Avatar* began). (Am. Compl. ¶ 15). (Zavin Decl. Exs. D-F).[3]

___

[3] Copies of the fourteen paintings identified in paragraph 21 of the Amended Complaint appear at Zavin Decl. Ex. D pp. 172-73 (The 1st of April), 170-71 (Floating Islands), 126 (Stairway to Heaven), 108-09 (Arches Mist), 63 (Red Dragon Landscape), 69 (Aftermath), 100-01 (The Guardians), 114 (Ascension City), 117-19 (Floating Jungle), 77 (festival logos from the Northeastern Art Rock Festival), and 93 (Yes Dragonfly Logo); Ex. E pp. 116-17 (Pathways (Yessongs)) and 74-75 (Magician's Birthday); and the cover of Ex. F (Morning Dragon).

**ARGUMENT**

**PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS MUST BE DISMISSED BECAUSE THERE IS NO SUBSTANTIAL SIMILARITY BETWEEN *AVATAR* AND THE COPYRIGHTABLE ELEMENTS OF PLAINTIFF'S WORKS**

"To establish [copyright] infringement, two elements must be proven:  (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  With respect to the second element, even if a plaintiff can establish "actual copying," this is not sufficient to impose liability—a plaintiff must also demonstrate that the copying in question is <u>actionable</u>  "because a substantial similarity exists between the defendant's work and the <u>protectible elements</u> of plaintiff's." *Peter F. Gaito*, 602 F.3d at 63.[4]  Here, Plaintiff's claims must be dismissed because there is no substantial similarity as a matter of law between *Avatar* and the protectable elements in any of the paintings identified in the Amended Complaint.

  A.  **The Court Can Properly Compare the Subject Works and Determine Lack of Substantial Similarity as a Matter of Law on a Motion to Dismiss**

The Second Circuit has clearly held that copyright claims can, and should, be dismissed at the pleading stage "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito*, 602 F.3d at 63, 69 (internal quotation  and citation omitted) (affirming dismissal of infringement claim where similarity in architectural designs involved "ideas and concepts").[5]

---

[4] Courts assessing a claim of copyright infringement on a motion to dismiss frequently assume (solely for purposes of the motion) that "actual copying" occurred, and address only the issue of whether the requisite "substantial similarity" exists between the defendant's work and the protectable elements of the plaintiff's.  *See, e.g., Peter F. Gaito.*, 602 F.3d at 63 (2d Cir. 2010); *Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 562-63 (S.D.N.Y. 2009).

[5] *See also, e.g., Gordon v. McGinley*, 502 F. App'x 89, 90 (2d Cir. 2012) (affirming dismissal of infringement claims involving photographs and video), *cert. denied*, --U.S.--, 133 S. Ct. 2742 (2013); *DiTocco v. Riordan*, 496 F. App'x 126, 127-28 (2d Cir. 2012) (affirming dismissal of

In determining such a motion to dismiss, a court should review and compare the subject works as documents incorporated by reference and integral to the complaint, and should not assume the truth of allegations of similarities between the works.  As the Second Circuit recently explained: "[T]he works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings."  *Id.* at 64 (internal citations and quotations omitted); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986); *see also, e.g., DiTocco v. Riordan*, 815 F. Supp. 2d 655, 666 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 126 (2d Cir. 2012).  "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works."  *Peter F. Gaito*, 602 F.3d at 64.

**B.  The "Substantial Similarity" Test**

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same."  *Peter F. Gaito*, 602 F.3d at 66 (internal quotation and citation omitted).  Where, as here, the Plaintiff's work contains both protectable and unprotectable elements, courts apply what is known as the "more discerning" ordinary observer test, and must "attempt to extract the unprotectible elements from our consideration and ask whether the *protectible elements, standing alone*, are substantially similar."  *DiTocco v. Riordan*, 496 F. App'x 126, 128 (2d Cir. 2012) (emphasis in original, quotation omitted); *Peter F. Gaito*, 602 F.3d at 66 (same); *see also, e.g., Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 514 (2d Cir. 1991) ("What must be shown is substantial similarity between those elements, and only those elements, that provide copyright-ability to the allegedly infringed [work].").

---

infringement claims involving film and novels); *Alexander v. Murdoch*, 502 F. App'x 107, 108 (2d Cir. 2012) (affirming dismissal of infringement claims involving script and television series), *cert. denied*, --U.S.--, 133 S. Ct. 2812 (2013).

Among unprotected elements that must be extracted from consideration are general ideas and concepts, "*scènes à faire*," and public domain material.  It is a "principle fundamental to copyright law that a copyright does not protect an idea," but only an author's particularized expression of an idea. *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996); *see also, e.g.,*  17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . ."); *Attia v. Soc'y of the New York Hosp.*, 201 F.3d 50, 54 (2d Cir. 1999).  Similarly, "[u]nder the doctrine of  *scènes à faire*, elements of an image that flow naturally and necessarily from the choice of a given concept," *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 392 (S.D.N.Y. 2005), or are "standard" in the treatment of a given topic, *Kaplan v. Stock Market Photo Agency, Inc.*, 133 F. Supp. 2d 317, 322-23 (S.D.N.Y. 2001), are not protectable.  *See also, e.g., Williams*, 84 F.3d at 589.

In addition, public domain material, such as things found in nature, "is free for the taking and cannot be appropriated by a single author even though it is included in a copyrighted work." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 710 (2d Cir. 1992); *Satava v. Lowry*, 323 F.3d 805, 810-11 (9th Cir. 2004) (no substantial similarity between visually similar "glass-in-glass" jellyfish sculptures, because similarities resulted from shared idea and public domain elements appearing in nature); *Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005) ("To the extent a photograph captures the characteristics of an object as it occurs in nature, these characteristics are not protectible"); *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 378 F. Supp. 485, 490 (S.D.N.Y. 1974), *aff'd*, 509 F.2d 64 (2d Cir. 1974) (defendant's turtle pin did not infringe on plaintiff's where "each designer was merely representing nature").

In assessing substantial similarity, a court must assess the works as a whole, rather than focus on allegations of isolated, scattered similarities between the two.  "Such a scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue:  whether a lay observer would consider the works as a whole substantially similar to one

another." *Williams*, 84 F.3d at 590.  Further, in order to establish infringement with respect to any one of the fourteen paintings identified in the Amended Complaint, Plaintiff must establish a substantial similarity between that painting, standing alone, and *Avatar*—Plaintiff may not aggregate, or "mix and match" alleged similarities between *Avatar* and fourteen separate works in order to state a claim.  *See Nat'l Comics Publ'ns, Inc. v. Fawcett Publ'ns, Inc.*, 198 F.2d 927, 927 (2d Cir. 1952) (determination of infringement "will demand a comparison of each [comic] strip put in suit by the plaintiff with [defendant's] strip . . . .  The plaintiff may put in suit as many strips as it pleases, but it must prove infringement of each, or it will lose as to that strip"); *Kroencke v. Gen. Motors Corp.,* 270 F. Supp. 2d 441, 443 (S.D.N.Y. 2003) (rejecting plaintiff's attempt to claim infringement of seven separate works when "viewed in the aggregate"), *aff'd*, 99 F. App'x 339 (2d Cir. 2004).  Accordingly, in comparing the works at issue, the Court must compare each individual painting against the relevant scenes in *Avatar*, rather than multiple paintings collectively.

Finally, "numerous differences" between the two works "tend to undercut substantial similarity."  *Warner Bros., Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 241 (2d Cir. 1983).  This is particularly true in the case of "graphic or three-dimensional work[s]" which are "created to be perceived as an entirety.  Significant dissimilarities between two works of this sort inevitably lessen the similarity that would otherwise exist between the total perceptions of the two works."  *Id.*

### C. There is No Substantial Similarity Between *Avatar* and the Copyrightable Elements of the Paintings Identified by Plaintiff

As demonstrated below, any alleged similarities between *Avatar* and Plaintiff's works relate solely to unprotectable (and public domain) ideas and concepts, such as the use of "floating" land masses, stone arches or willow-like trees in landscapes.  When the basic unprotectable concepts are extracted from consideration (as they must be), it is clear that the works are substantially different, and no reasonable jury could find the works substantially similar as a matter of law.

1. **There is No Legally Cognizable Similarity Between _Avatar_'s Hallelujah Mountains and Plaintiff's "Floating Islands"**

    a. **Any Similarities Result From an Unprotectable Shared Concept**

Plaintiff claims that _Avatar_ infringes three paintings featuring the concept of "floating islands"—"Floating Islands" (Zavin Ex. D pp. 170-71), "The 1st of April" (_id._ pp. 172-73) and "Stairway to Heaven" (_id._ p. 126).  (Am. Compl. ¶ 21(a-c)).  However, when the actual works, rather than Plaintiff's conclusory assertions, are considered, it is clear that any similarity between _Avatar_'s Hallelujah Mountains and Plaintiff's paintings results only from the shared concept of airborne land masses, which is the essence of what the Second Circuit held to be an unprotectable idea, and _scènes à faire_ that flow naturally therefrom (such as the land masses having rocky walls or being covered with foliage and vegetation similar to the surrounding environs).  There are myriad cases in this Circuit rejecting, as a matter of law, infringement claims based on such similarity of ideas and resulting _scènes à faire_.  _See, e.g., Cabell v. Sony Pictures Entm't, Inc._, 425 F. App'x 42 (2d Cir. 2011) (affirming dismissal on summary judgment of copyright claim where characters' similarity resulted from shared unprotectable ideas of brandishing blow dryer as a weapon and fighting pose), _cert. denied_, --U.S.--, 132 S. Ct. 1797 (2012); _Silberstein v. Fox Entm't Grp._, 424 F. Supp. 2d 616, 619 (S.D.N.Y. 2004), _aff'd sub nom. Silberstein v. John Does 1-20_, 242 F. App'x 720, 722 (2d Cir. 2007) (affirming dismissal on summary judgment of copyright claim where similarities between hybrid squirrel-rat cartoon characters named "Sqrat" and "Scrat," respectively, "fall within the _scenes a faire_ doctrine"); _Williams_, 84 F.3d at 589 (no copyright protection for concept of adventure story featuring modern-day children visiting park of ancient dinosaurs, with electrified fences, automated tours, dinosaur nurseries, and uniformed workers); _Eden Toys, Inc. v. Marshall Field & Co._, 675 F.2d 498, 500 (2d Cir. 1982) (rejecting infringement claim where "any similarity between [the parties' snowmen dolls] would appear to the ordinary observer to result solely from the [unprotectable idea] that both are snowmen"); _Durham Indus. v. Tomy Corp._, 630

F.2d 905, 915-17 (2d Cir. 1980) (affirming dismissal of infringement claim where similarities arose

from shared "idea of walking or crawling [baby] dolls" and "standard doll features" such as "full

faces, pert noses, bow lips, and large, widely spaced eyes");  *Kerr v. New Yorker Magazine, Inc.*, 63

F. Supp. 2d 320, 325 (S.D.N.Y. 1999) (no substantial similarity between drawings sharing

unprotectable idea of depicting New York City skyline in Mohawk haircut on man's head "and the

other uncopyrightable elements which the 'expression' of this 'idea' might reasonably be expected

to include").[6]  Simply put, the basic concept of land masses that float is not protectable and Plaintiff

has no monopoly in that idea.[7]

      Attached as Exhibit C to the Zavin Declaration is a DVD containing excerpts from *Avatar*

which, *inter alia*, illustrate the way the Hallelujah Mountains appear in the film.  When these scenes

from *Avatar* are compared with Plaintiff's "Floating Islands" painting (Zavin Decl. Ex. D pp. 170-

71), it is plain that, apart from the unprotectable elements that must be extracted from consideration,

the Hallelujah Mountains and Plaintiff's painting are substantially different in expression, and share

only the unprotected idea of airborne land masses.  For example, the Hallelujah Mountains, while

---

[6] *See also, e.g.,  DiTocco v. Riordan*, 815 F. Supp. 2d 655, 672-73 (S.D.N.Y. 2011), *aff'd*, 496 F.
App'x 126 (2d Cir. 2012) (no protectible similarities between two adventure stories featuring shared
idea of modern-day adolescent male named Percy, descended from Greek gods, featuring characters
from Greek mythology and shared plot point of Zeus' missing lightning bolt); *Porto v. Guirgis*, 659
F. Supp. 2d 597, 613 (S.D.N.Y. 2009) (idea of a modern fictional account of "Judas standing trial,"
with historical figures as witnesses, was not protectable); *Hogan v. DC Comics*, 48 F. Supp. 2d 298,
300, 310 (S.D.N.Y. 1999) (two works involving half-human, half-vampire protagonists named
Nicholas Gaunt, who seeks to uncover truth of his origins, shared only "unprotectible ideas"); *Great
Importations, Inc. v. Caffco Int'l, Inc.*, No. 95 Civ. 0514 (MBM, SEG), 1997 U.S. Dist. LEXIS
10700, at *13 (S.D.N.Y. Jul. 24, 1997) ("[P]laintiff cannot claim protection in the depiction of baby
angels as round-cheeked, smiling or bemused, and wearing loose robes or drapery.  These are
stereotypical attributes of baby angels or cupids . . . indispensable to the generalized idea of baby
angels, analogous to unprotected *scènes à faire* . . . ."); *Gund, Inc. v. Smile Int'l, Inc.*, 691 F. Supp.
642, 645 (E.D.N.Y. 1988) ("There are similarities between the two stuffed dogs.  But the features
that might cause an ordinary observer to regard the aesthetic appeal as similar . . . are the very
features so generalized as not to be the subject of copyright protection."), *aff'd*, 872 F.2d 1021 (2d
Cir. 1989) .

[7] *See e.g.*, *Gulliver's Travels*, written in 1726 by Jonathan Swift, regarding the floating, tree-
covered island of Laputas.

appearing in an alien world, are depicted hyper-realistically, with crags in the rock formations and individual plants, trees and other vegetation depicted in photorealistic detail. Plaintiff's "Floating Islands," painting, in stark contrast, is entirely fantastic, featuring egg-shaped, barren boulders floating over a pink-hued horizon. The Hallelujah Mountains are enormous, dwarfing the military helicopters and flying banshees that soar between them during battle sequences, and, like real mountains, are densely blanketed with their own forests (similar to the surrounding Pandoran landscape from which they rose). Plaintiff's "floating islands" in his painting of that name, are far smaller, essentially boulders rather than mountains, with no vegetation other than a prominent, solitary tree sitting atop of, and seemingly the same size as, the floating boulder itself. The Hallelujah Mountains, like real mountains, comprise a wide variety of shapes and sizes, whereas Plaintiff's boulders share the same oval shape and approximate size. The Hallelujah Mountains are plentiful, filling a crowded sky, often connected by enormous stalks and vines dangling between them. Plaintiff's Floating Islands, by contrast, are sparse, isolated and relatively smooth. These differences alone establish that there is no legally cognizable "substantial similarity" of expression between the works at issue. *Belair v. MGA Entm't, Inc.*, 503 F. App'x 65, 67 (2d Cir. 2012) (general similarities between images "are outweighed and overshadowed by significant distinctions that contributed to the different aesthetic appeals" of the works); *Gordon v. McGinley*, 502 F. App'x 89, 90 (2d Cir. 2012) (same), *cert. denied*, --U.S.--, 133 S. Ct. 2742 (2013).

Plaintiff's remaining paintings featuring the concept of "floating islands" fare no better. "The 1st of April" (Zavin Decl. Ex. D pp. 172-73) depicts small, mossy land masses (again essentially boulders) with a single tree against a pink backdrop, with the largest land mass containing a pond. "Stairway to Heaven" (*id.* p. 126) depicts small, yellow, unconnected rocks, floating in near proximity to each other, barren except for a single tree, set against a black backdrop.

There is no similarity between these works and the massive, rocky and heavily forested Hallelujah Mountains, beyond the bare concept of levitating land masses.

The different mediums involved further contribute to the vast differences between the works.  In contrast with the serene, still, almost pastoral images of floating islands appearing in Plaintiff's work, *Avatar*'s Hallelujah Mountains appear in "a wholly dissimilar and dynamic medium, in which camera angles, lighting, and focus" are constantly changing.  *Gordon v. McGinley*, No. 11 Civ. 1001 (RJS), 2011 U.S. Dist. LEXIS 92470, at *16 (S.D.N.Y. Aug. 18, 2011) (dismissing infringement claim and noting that "Plaintiff supplies little authority for the proposition that a single frame from a work containing more than 1,700 discrete images can support a claim for copyright infringement of a still photograph"), *aff'd*, 503 F. App'x 65 (2d Cir. 2012); *see also Silberstein*, 242 F. App'x at 722 (no substantial similarity between similarly-named cartoon hybrid squirrel-rat creatures where, *inter alia*, one is a "two-dimensional, monochromatic, static character" and the other "is portrayed as existing and moving in three dimensions").  When *Avatar* is viewed as a whole, it is plain that the film's hundreds of massive, three-dimensional, moving mountains, which are depicted from innumerable angles, in close-up and long shots, and act as the backdrop for fast-paced action sequences, bear no resemblance to the serene, still images in Plaintiff's work.  No effort on the part of Plaintiff to isolate individual screen grabs in an effort to create the illusion of a nonexistent similarity can change this fact.

Finally, differences between the subject works become even more important where, as here, the plaintiff's underlying idea is expressed at a "general enough [level] that considerable similarity will arise in any other expression of the idea. . . ."  *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 163 (E.D.N.Y. 2002), *aff'd*, 354 F.3d 112 (2d Cir. 2003).  Because the concepts of "floating islands" or "floating mountains" is general enough that any expression of those ideas will inherently bear some similarity, "other authors must be permitted to escape liability

for infringement by relying upon the differences in their work, to avoid having the original author, for all practical purposes, appropriate the idea itself." *Id.*; *see also, e.g., Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765-66 (2d Cir. 1991) (competing fabric designs which both featured roses were not substantially similar, because "by the rose's very nature one artist's rendering of it will closely resemble another artist's work"); *accord Satava*, 323 F.3d at 812 (where significant similarities inevitably result from shared unprotectable elements, plaintiff possesses "a thin copyright that protects against only virtually identical copying").

These authorities mandate that Plaintiff's claims that *Avatar* infringes his paintings "Floating Islands," "The 1st of April" and "Stairway to Heaven" must be dismissed for lack of substantial similarity as a matter of law: there is no substantial similarity between the defendant's work and the protectible elements of Plaintiff's. *Peter F. Gaito*, 602 F.3d at 63.  Any other result would grant Plaintiff an impermissible monopoly over an unprotectable idea.

### b. Courts Regularly Reject Infringement Claims Where Similarities Between Images Are Significant, Yet Non-Protectable

While the above cases make clear that courts in this Circuit regularly reject copyright infringement claims based on the foregoing principles, because this case involves alleged similarities between graphic, visual works, it is particularly helpful to consider some of the actual images that previous courts found to be non-infringing.  Images at issue in each of the cases cited in this section—which involve such works as dolls, photographs, sculptures and cartoons—are reproduced in paragraphs 14-20 of the Zavin Declaration.  Review of these images further confirms that courts in this Circuit frequently reject infringement claims involving graphic works that bear far greater surface similarities than the levitating land masses and other images at issue here.

For example, in *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983), the Second Circuit, in affirming the denial of a preliminary injunction, rejected the claim that defendants' action figure toy dolls infringed the popular, identically-sized "Masters of the

15

Universe" dolls upon which they were admittedly modeled, despite acknowledging that the "dolls'

bodies are very similar."  The Court stated that because "nearly all of the similarity can be attributed

to the fact that both are artist's renderings of the same unprotectable idea – a superhuman

muscleman crouching in what since Neanderthal times has been a traditional fighting pose," there

was no likelihood of infringement.  724 F.2d at 359-60.  The fact that "a lay observer would

recognize certain differences" in the expression of the idea as subtle as the overemphasis of certain

muscle groups was sufficient to avoid a finding of substantial similarity.  *Id.*  Photographs of the

action figures at issue in *Mattel* can be found in ¶ 14 of the Zavin Declaration.  Here, the differences

between Avatar's Hallelujah Mountains and Plaintiff's paintings are far greater than those found

sufficient to defeat an infringement claim in *Mattel*.

Similarly, in *Belair v. MGA Entm't, Inc.*, 831 F. Supp. 2d 687 (S.D.N.Y. 2011), *aff'd*, 503 F.

App'x 65 (2d Cir. 2012), the defendant admittedly modeled its line of dolls on plaintiff's

copyrighted image of two women  entitled "Angel / Devil Girl," which was used in a well-known

advertisement for Steve Madden Shoes.  831 F. Supp. 2d at 690-91, 697-98.  The District Court

acknowledged that defendant's dolls and plaintiff's figures shared similar exaggerated features, and

that the dolls "capitalize on" and "bring to mind the image that [defendant] created," but held that

differences between the works rendered them not substantially similar:

> It is undisputed that [defendant] was aware of the Steve Madden look and sought to
> capitalize on it.  But that is not enough to justify a finding of infringement. . . .
> Although [defendant's] dolls may indeed bring to mind the image that [plaintiff]
> created, [plaintiff] cannot monopolize the abstract concept of an absurdly large-
> headed, long limbed, attractive, fashionable woman.

*Id.* at  697-98.  The Second Circuit affirmed, agreeing that the works' "general similarities are

outweighed and overshadowed by significant distinctions," and noting that even if the works are

"similar in the layman's sense of the term," that is "plainly not enough" to demonstrate

infringement.  503 F. App'x at 67 (quoting 4-13 *Nimmer on Copyright* § 13-03[A][4]); *see* Zavin Decl. ¶ 15 for the images in question in *Belair*.

Courts have reached similar results in infringement claims involving photographs, finding that photographs appearing extremely similar in the layman's sense nevertheless were not "substantially similar" for purposes of an infringement claim as a matter of law.  In *Bill Diodato Photography,* for example, the court found that there was no protectable similarity between similar photographs, each shot through an opening at the bottom of a bathroom stall, showing "a woman's feet, astride a toilet, in stylish, colorful shoes . . . and a handbag resting on the floor."   The similarities resulted from the plaintiff's underlying idea and elements naturally flowing therefrom. 388 F. Supp. 2d at 383-84, 392-93.  The underlying idea itself was not protectable.  *See* Zavin Decl. ¶ 16 for copies of the photographs at issue.

Similarly, in *Kaplan*, the court found that there was no protectable similarity between similar photographs shot from the perspective of businessmen, in pinstriped suits with wing-tipped shoes, contemplating leaps from tall buildings on bustling city streets below.  Again, the photographs shared only an unprotectable central idea and elements flowing therefrom.  133 F. Supp. 2d at 324-28; *see* Zavin Decl. ¶ 17 for copies of the photographs at issue.  Other examples abound of courts rejecting claims of substantial similarity as a matter of law despite significant facial resemblances between graphic works, in this Circuit and elsewhere.  *See, e.g., Silberstein* , 242 F. App'x at 722 (no substantial similarity between cartoon images of anthropomorphic hybrid squirrel-rat characters); *Satava*, 323 F.3d at 810-11 (no substantial similarity between visually similar "glass in glass" jellyfish sculptures, because similarities resulted from shared idea and public domain elements);  *Gordon*, 502 F. App'x at 90 (affirming dismissal of copyright claim involving, *inter alia*, two photographs of young men suspended before a cloudy sky, each with his

right arm extended and bent at a right angle); *see* Zavin Decl. ¶¶ 18-20 for the images at issue in the

aforementioned cases.

As these authorities make clear, it is not enough that Avatar's Hallelujah Mountains and

Plaintiff's "Floating Islands" may be "similar in the layman's sense of the term." For purposes of

the substantial similarity analysis under copyright law, the Court must determine to what extent the

"similarities" result from the underlying (and unprotectable) concept, extract those elements from

consideration, and bear in mind the difference between the protectable aspects of the works. Once

this is done, there can be but one conclusion. *Avatar* and Plaintiff's paintings of floating land

masses are not substantially similar, as a matter of law.

### 2. There is No Substantial Similarity Between *Avatar* and Plaintiff's Paintings Featuring Stone Arches

Plaintiff's claims that stone arches appearing in Pandora's landscape infringe his paintings

"Arches Mist," "Red Dragon Landscape," "Aftermath," "The Guardians" and "Ascension City" fail

for the same reason. (Am. Compl. ¶ 22(d-h)). Obviously, Plaintiff has no protectable interest in the

concept of "stone arches"—such structures appear in nature (*see, e.g.,*

http://en.wikipedia.org/wiki/Arches_National_Park) and are thus in the public domain. *See, e.g.,*

*Satava*, 323 F.3d at 811 (elements of work deriving from jellyfish physiognomy in public domain);

*Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 268, 275 (S.D.N.Y. 2005) ("To the extent a

photograph captures the characteristics of an object as it occurs in nature, these characteristics are

not protectible"); *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 378 F. Supp. 485, 490

(S.D.N.Y.) (that competing turtle pins each had ten gems on the turtle's pack is neither protectable

or evidence of copying where "a turtle has at least ten vertebrae segments on the top of his

carapace" and "each designer was merely representing nature"), *aff'd*, 590 F.2d 64 (2d Cir. 1974).

Indeed, Plaintiff acknowledges in his book "Dragon's Dream" that his paintings of stone arches are

"based on rock formations in the ancient seabeds of Utah and Arizona." (Zavin Decl. Ex. D p. 104).

As with Plaintiff's "floating islands," when the arches on Pandora as they appear in *Avatar* (*see* Zavin Decl. ¶ 10 (screen grab showing one of *Avatar*'s arches), Ex. C, "Arches" (excerpts from film)) are compared with Plaintiff's paintings it is clear that there is no similarity beyond the underlying, unprotected concept, and no reasonable juror, properly instructed, could find the works substantially similar as a matter of law. *Avatar*'s "arches" appear on screen for less than four minutes. Like the Hallelujah Mountains, they are massive and thick, dwarfing the helicopters and Na'vi warriors that fly near them, and are overgrown with trees and moss. They are jagged and craggy, with rough, uneven surfaces, with lateral faces connected by sharp, squared angles. The arches in Plaintiff's "Arches Mist" painting (Zavin Decl. Ex. D. pp. 108-09), by contrast, are  far smoother (appearing almost polished), thinner, and delicate, with a rounded perimeter. Unlike *Avatar*'s arches they are virtually barren. Whereas *Avatar*'s arches are set amidst the mountains and forests of Pandora, the structures in "Arches Mist" stand alone, set in water against an empty backdrop. There is little in the foreground of Plaintiff's paintings to give a sense of perspective, and no sense of the same type of enormity as featured in the Pandoran arches.

Plaintiff's remaining paintings depicting "arches" are even less similar to *Avatar*. "Aftermath" (*id.* p. 69) and "The Guardians" (*id.* pp. 100-01) also feature arced structures that are far smoother and thinner, and more rounded and monochromatic, than those in *Avatar* and which, unlike the arches in *Avatar*, are essentially vertical in nature, with heights that vastly exceed their widths. "Red Dragon Landscape" (*id.* p. 63) does not even feature arches, but rather depicts small, smooth stone structures pointing upwards. And "Ascension City" (*id.* p. 114) merely includes a few small rock arches in the foreground, in front of a far larger, multiple mushroom-headed structure that does not resemble anything in *Avatar*.

In short, *Avatar* and the aforementioned paintings have nothing in common other than the fact that they both include curved stone. Plaintiff's claim that he has a monopoly on arches or

curved stone structures is frivolous.  As explained *supra* at 14-15, where an author expresses an idea at a level general enough that considerable similarity will arise in any other expression of the idea, even subtle differences are sufficient to avoid an infringement claim, or else the original author will be permitted to appropriate the idea itself.  Plaintiff has no copyrightable interest in the public domain concept of stone arches (which are found in nature itself), and his claims that *Avatar* somehow infringes on his paintings "Arches Mist," "Red Dragon Landscape," "Aftermath," "The Guardians" and "Ascension City"  must be dismissed as a matter of law.

### 3.  There Are No Protectable Similarities Between *Avatar's* Hometree and Plaintiff's "Pathways"

Plaintiff claims with no explanation that *Avatar* infringes his "Pathways (Yessongs)" painting (Am. Compl. ¶ 21(i)), but there is nothing on Pandora that remotely resembles the two stone structures featured in the Pathways painting.  (*See* Zavin Decl. Ex. E p. 116-17).  It is only by reference to Plaintiff's original Complaint that one can even discern the nature of Plaintiff's claim—that Pathways' "distant tree city provides the form and the iconic silhouette for the 'Home Tree.'"  (Compl. (Docket No. 1) ¶ 23(c)).  However, actual review of Plaintiff's "Pathways" painting reveals nothing that an ordinary observer would perceive as a tree at all, much less a "tree city."  As stated above, the central image in Pathways does not even appear to be a tree at all; rather, it seems to be a stone structure, with a thick, smooth mushroom-like top.  *See Peter F. Gaito*, 602 F.3d at 64 ("[T]he works themselves supersede and control contrary descriptions of them . . . contained in the pleadings.").

Hometree, by contrast, is an enormous tree.  It contains myriad features one would expect to see in a tree—a brown, wooden trunk, long branches, green leaves—none of which appear anywhere whatsoever in the structure depicted in Plaintiff's Pathways painting.  Even if, from a particular angle, Hometree shares a similar shape with the Pathways top as a result of Hometree's flat-topped crown, Hometree's crown is not nearly so thick or rounded as Pathways' mushroom-like

structure, and the crown's diameter relative to the structure's base is far greater in Hometree.  *See Eden Toys*, 675 F.2d at 500 (considering specific size and spacing of elements in determining that snowmen designs were not substantially similar); *Queenie, Ltd. v. Sears, Roebuck & Co.*, 124 F. Supp. 2d 178, 172 (S.D.N.Y. 2000) (considering size and spacing in determining garments with multi-colored squares were not substantially similar).  Moreover, trees featuring similar flat-topped crowns—albeit on a far smaller scale—appear throughout nature, and are thus in the public domain. (*See* Zavin Decl. ¶ 9, Ex. H).[8]  Whether the ordinary observer or the "more discerning" test is applied, when images of Hometree are compared against Plaintiff's Pathways painting, it is clear that there is no legally cognizable similarity between these very different images.  (*Compare* Zavin Decl. Ex. C, "Hometree," *with* Ex. E at 116-17).  Again, the claim is frivolous.

In his original Complaint Plaintiff also claimed that the spiral "pathway" in the foreground of his "Pathways" painting "becomes the double helix pathway within the 'Home Tree'" (Compl. (Docket No. 1) ¶ 23(c)), but this position is also specious.  Plaintiff obviously has no copyright interest in the concept of a spiral stairway.  Further, there is no similarity of protectable expression between Hometree's internal core structure and Plaintiff's work.  Hometree's core structure is a dual spiral stairway with a roughly double-helical core; Plaintiff's spiral is a single helix (contrary to Plaintiff's characterization of it as a "double helix" in the original Complaint).  Hometree's stairway is thick and rounded, formed by limbs of a massive tree; Plaintiff's spiral is thin and polished.  Hometree's stairway is located inside an enormous tree and is not visible from the outside; Plaintiff's spiral is external, and surrounds a rock-like structure that in no way resembles a tree.  Hometree's stairway rises extremely high, allowing the Na'vi to move up and down their enormous home; Plaintiff's spiral is short, and serves no discernible purpose.  (*Compare* Zavin

---

[8] *See also* https://www.google.com/search?q=acacia&source=lnms&tbm=isch&sa=X&ei=yzB9UuHOOoaUkQfr0YGIDw&ved=0CAcQ_AUoAQ&biw=1350&bih=920#q=acacia+tree&tbm=isch (last visited November 8, 2013) (Google image search for "acacia tree").

Decl. ¶ 11(screen grabs featuring Hometree's internal core structure) and Ex. C "Hometree," *with* Ex. E at 116-17).  Because it is clear that *Avatar*'s Hometree bears no resemblance whatsoever to Plaintiff's Pathways painting, Plaintiff's claims based upon such painting must be dismissed.

      **4.**    **There Is No Similarity Between the *Avatar*'s Tree of Souls or Tree of Voices and Plaintiff's "Floating Jungle"**

Plaintiff also claims, with no explanation, that *Avatar* infringes sketches and a painting titled "Floating Jungle" (Am. Compl. ¶ 21(j); Zavin Decl. Ex. D at 117-19), but again, because Floating Jungle bears no apparent resemblance to any element in *Avatar*, it is impossible to discern the nature of Plaintiff's claim without reference to his original Complaint.  Based on the original Complaint, it seems that Plaintiff believes that Floating Jungle somehow resembles something in *Avatar* that Plaintiff calls the "Tree of Life"  (Compl. ¶ 23(b)), but which appears to be a misnomered reference to *Avatar*'s "Tree of Souls" and/or "Tree of Voices."  But there is simply no resemblance, protectable or otherwise, between Plaintiff's "Floating Jungle" and either the Tree of Souls or Tree of Voices in *Avatar*. The Tree of Souls and Tree of Voices are willow-like trees, connected to the ground, with long, thin, bioluminescent tendrils that hang straight down, through which the Na'vi can neurologically connect, transferring electrochemical signals and uploading and downloading data such as thoughts and memories.  "Floating Jungle" features trees or plants floating in the air, covered by a thick, heavy layer of drooping green moss.  (*Compare* Zavin Decl. ¶ 12 (screen grabs featuring the Tree of Voices of Tree of Souls) and Ex. C ("Trees") *with* Ex. D at 117-19).  Any claim of protectable similarities between these images is again frivolous.

      **5.**    **There are No Similarities Between *Avatar*'s Fantastic and Original Alien Life Forms and the Remaining Paintings Identified by Plaintiff**

Plaintiff also alleges, once more with no explanation, that *Avatar* infringes his paintings featuring (i) a dragon ("Morning Dragon," Zavin Decl. Ex. F (cover)), (ii) a man holding a stick in a fighting pose, amidst a psychedelic landscape ("Magician's Birthday," *id.* Ex. E pp. 74-75), and (iii)

real-life lizards and dragonflies ("Festival logos" and "Yes Dragonfly Logo," *id.* Ex. D pp. 77 and 93).  (Am. Compl. ¶ 21 (k-n)).  To the extent Plaintiff intends to argue that the various life forms featured in these paintings somehow resemble the fantastic alien wildlife appearing on Pandora, his claim is specious in the extreme.

> a.  <u>There is No Protectable Similarity Between "Morning Dragon" and *Avatar*'s Banshees</u>

Because the Amended Complaint provides no specifics, Defendants can only assume that Plaintiff's position is that the dragon in his painting "Morning Dragon" is infringed by *Avatar*'s banshees, large flying creatures on which the Na'vi ride.  While the banshees are reptilian in appearance, they are not dragons, and in any case Plaintiff has no copyrightable interest in the concept of flying dragon-like creatures, a staple in fantasy fiction.  *See, e.g., Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004) (listing "a fire-breathing dragon" as an example of the stereotypical stock character, not susceptible to copyright protection); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 553-54 (S.D.N.Y. 2003) (finding no substantial similarity as a matter of law between two dragon designs, each of which were embroidered on pant legs:  "No reasonable factfinder could conclude that the dragons at issue are substantially similar in the relevant respect because virtually all of the similarity is attributable to the fact that the images are all dragons.").

Beyond the commonplace and unprotectable concept of flying reptilian creatures, there is no similarity in the protectable expression of Plaintiff's Morning Dragon and *Avatar*'s banshees. Plaintiff's Morning Dragon is long and flexible, with a thin, almost snake-like body that extends directly from its head (with no distinguishable "neck" separating the body from the head), and splits and tapers into two thin tails that arch over the dragon's head.  *Avatar*'s banshees are far thicker, stouter, and more muscular, allowing them to support the weight of the Na'vi warriors who ride them, and have an elongated neck separating their heads from their bodies.  The Morning Dragon

23

has delicate,  moth-like multi-colored wings rising out of its lower back, which are not connected to

any limbs and are colored differently than the creature's body.  Banshees have far thicker, heavy,

leathery wings which are connected to a long, finger-like claw, as well as a secondary set of fan-

tailed wings that connect to their short vestigial legs (which themselves contrast with the Morning

Dragon's more prominent, and more developed, streamlined elongated legs).  Unlike Plaintiff's

dragon, banshees' wings are of the same color as the rest of the creature, and while banshees come

in a wide variety of color schemes none are colored similarly to Plaintiff's creature.  Further, there

is no resemblance between the Morning Dragon's head, which features an elongated snout and a

pink, fan-like "ear," and the banshee's head, which is marked by a unique distensible jaw and twin

neural antennae (similar to those possessed by virtually all Pandoran creatures) through which they

neurologically connect with the Na'vi. (*Compare* Zavin Decl. ¶ 13 (screen grabs featuring *Avatar*'s

banshee) and Ex. A at 1:58:13-1:59:50, 2:11:30-2:12:25 (excerpts from film featuring banshees)

*with* Ex. F cover (Plaintiff's "Morning Dragon")).  The creatures are wholly different in appearance.

As explained *supra* at 11 and 17, in *Silberstein* the Second Circuit found no substantial

similarity as a matter of law where any similarities between animated cartoon figures arose from the

shared concept of anthropomorphic hybrid squirrel-rat characters—concept far more unique than

the "flying dragon" concept that Plaintiff seeks to monopolize via the present claim.  242 F. App'x

at 721-22.  Plaintiff cannot monopolize the idea of a flying, reptilian creature, and his claim that

*Avatar* somehow infringed his "Morning Dragon" painting must be dismissed as a matter of law.

### b.  **"Magician's Birthday" Does Not Resemble Any Aspect of *Avatar***

"Magician's Birthday" (Zavin Decl. Ex. E. pp. 74-75), features what appears to be a naked

man, holding a stick as a weapon, staring up at the red silhouette of a monstrous figure, set amidst a

psychedelic landscape.  To be frank, Defendants have no clue what scene or element of *Avatar* this

tableau is supposed to resemble.  The human figure holding a stick in "Magician's Birthday" bears

no resemblance to *Avatar*'s Na'vi, (*inter* alia, the Na'vi are ten feet tall and the figure depicted in Plaintiff's painting seems to be normal size).  Moreover, "fighting poses" are plainly unprotectable. *E.g., Cabell*, 425 F. App'x at 42; *Mattel*, 724 F.2d at 360.  Because no reasonable juror, however discerning, could find that *Avatar* was appropriated from "Magician's Birthday," Plaintiff's claim concerning this painting must be dismissed.  *See Peter F. Gaito*, 602 F.3d at 66 ("ordinary observer test" asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work").

> c.  **Plaintiff's Artworks Depicting Real-Life Lizards and Dragonflies Do Not Resemble *Avatar*'s Alien Wildlife**

It is equally unclear why Plaintiff believes that *Avatar* infringes his logos featuring lizards (Zavin Decl. Ex. D. p. 77) and dragonflies (*id.* p. 93) (Am. Compl. ¶ 21(m-n).  No reasonable juror could find similarity between these real-life creatures and the fantastic alien creatures that fill Pandora's diverse biosphere.  (*See supra* at 5-6).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice in its entirety.

Dated: New York, New York
       November 14, 2013

LOEB & LOEB LLP

By: */s/ Jonathan Zavin*
       Jonathan Zavin
       Jonathan Neil Strauss
       Michael Barnett
       345 Park Avenue
       New York, New York 10154-1895
       (212) 407-4000

*Attorneys for Defendants*