UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
WILLIAM ROGER DEAN,

                Plaintiff,

      -v-

JAMES CAMERON et al.,

               Defendants.
------------------------------------------------------------------------X

13-CV-4479 (JMF)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/17/2014

JESSE M. FURMAN, United States District Judge:

      Plaintiff William Roger Dean, a successful artist, brings this action against James Cameron, the renowned writer and director; Twentieth Century Fox Film Corporation; Twentieth Century Fox Home Entertainment; and Lightstorm Entertainment (together, "Defendants"). Plaintiff alleges that Defendants, through their work on the blockbuster 2009 feature film *Avatar*, infringed his copyright on fourteen "original artworks created and owned by Plaintiff." (Am. Compl. (Docket No. 12) ¶ 21). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants move to dismiss the Amended Complaint. They contend that Plaintiff cannot show that a substantial similarity exists between *Avatar* and the copyrightable elements of Plaintiff's artworks. (Docket No. 18). The Court agrees. Accordingly, for the reasons stated below, Defendants' motion is GRANTED, and the Amended Complaint is dismissed.

## BACKGROUND

      On a motion to dismiss, "a district court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v.*

*Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks omitted).  Where, as here, a plaintiff alleges copyright infringement, "the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Id.* (internal quotation marks and citation omitted).  Accordingly, the following facts are taken from the Amended Complaint, Plaintiff's fourteen paintings,[1] and the final film version of *Avatar*.[2]  To the extent that the works at issue deviate from allegations or descriptions in the Amended Complaint, the Court relies on the works themselves and gives no weight to the Amended Complaint.

Plaintiff has worked as an artist and designer for more than forty-five years.  (Am. Compl. ¶ 11).  He has produced work in various media, including architecture, design, and painting.  (*Id.* ¶ 11).  His works have been exhibited in art shows and galleries, including a collection at the Victoria and Albert Museum in London.  (*Id.* ¶ 12; Pl.'s Mem. Law Opp'n

---

[1] The fourteen paintings at issue are reproduced in three separate publications provided in Defendants' materials: Declaration of Jonathan Zavin (Docket No. 20) ("Zavin Decl."), Ex. D (ROGER DEAN, DRAGON'S DREAM (Ivy Press 2008)) 172-73 (image of *April 1st* (2003) (acrylic on canvas 72 x 48 inches)); *id.* at 170-71 (image of *Floating Islands* (1993) (acrylic on canvas 72 x 48 inches)); *id.* at 126 (image of *Stairway to Heaven* (2007) (acrylic on canvas 39 x 39 inches)); *id.* at 108-09 (image of *Arches Mist* (1996) (acrylic on canvas 72 x 48 inches)); *id.* at 63 (image of *Red Dragon Landscape* (1987) (acrylic on canvas 72 x 48 inches)); *id.* at 69 (image of *Aftermath* (1987) (acrylic on board 42 x 28 inches)); *id.* at 100-01 (image of *The Guardians* (1991) (acrylic on canvas 72 x 48 inches)); *id.* at 114 (image of *Ascension City* (1997) (acrylic on board 30 x 20 inches)); *id.* at 118-19 (image of *Floating Jungle* (2002) (acrylic on canvas 72 x 48 inches)); *id.* at 76-77 (images of *Northeastern Art Festival Logos* (2001-2005, 2007) (ink line drawings digitally reworked)); *id.* at 93 (images of *Yes Dragonfly & Chop Logos I, II, III & IV* (2001) (glycee prints 9 x 12 inches)); Zavin Decl., Ex. E (ROGER DEAN, VIEWS (Ivy Press 2009) (1975)) 116-17 (image of *Yessongs—Pathways* (1973) (gouache, watercolor, ink 43 x 31 inches)); *id.* at 74-75 (image of *The Magician's Birthday* (1972) (watercolor, ink, montage 42 x 21 inches)); Zavin Decl., Ex. F (ROGER DEAN, MAGNETIC STORM (Ivy Press 2009) (1984)) cover (image of *Morning Dragon* (undated)).  (Am. Compl. ¶ 21).

[2] All references to the film and screen captures herein are derived from the DVD provided with the Declaration of Jonathan Zavin (Docket No. 20, Ex. A), which is identified as a "true and correct copy of the theatrical release" of *Avatar* "marked with an on-screen time-code."

Defs.' Mot. To Dismiss (Docket No. 28) ("Pl.'s Mem.") 1).  He has also created cover art and logo designs for recording artists, including — perhaps most famously — the rock band Yes.  (Am. Compl. ¶ 12).  Many of Plaintiff's works — including the fourteen works that he alleges Defendants infringed — are reproduced in three separate publications: *Dragon's Dream*, *Views*, and *Magnetic Storm*.  (*Id.* ¶ 15; *see supra* note 1).  Plaintiff apparently created the fourteen works at issue between 1972 and 2007.  (Am. Compl. ¶ 21; *see supra* note 1).

Defendant Cameron is a writer and film director whose works include well-known motion pictures such as *The Terminator* (1984), *Aliens* (1986), *Terminator 2: Judgment Day* (1991), *True Lies* (1994), and *Titanic* (1997), which won the Academy Award for Best Picture.  In 2009, he and the other Defendants, all movie production companies, released *Avatar*, which became the highest-grossing film of all time by at least one measure.  (Defs.' Mem. Law Supp. Mot. To Dismiss (Docket No. 19) ("Defs.' Mem.") 1).[3]  *Avatar* is set in the year 2154 A.D. in the fictional world of Pandora, light years away from Earth.  (*Id.* at 3).  Pandora is inhabited by the Na'vi, "tall, blue-skinned humanoids with catlike features."  (*Id.*).  The eponymous avatars are genetically engineered Na'vi bodies that "genetically-matched humans" control "via a mental link" to explore Pandora.  (*Id.*).  The plot of the film involves a human-controlled corporation mining Pandora for "unobtanium" — a valuable energy source that, as its name suggests, is difficult to acquire (in part because Pandora's atmosphere is poisonous to humans).  (*Id.*).  In its

---

[3]     That measure, however, is potentially misleading.  *See* N. GREGORY MANKIW, PRINCIPLES OF MACROECONOMICS 227 (7th ed. 2013) ("Movie popularity is usually gauged by box office receipts.  By that measure, *Avatar* is the number 1 movie of all time with domestic receipts of $761 million . . . .  But this ranking ignores an obvious but important fact: Prices, including those of movie tickets, have been rising over time.  Inflation gives an advantage to newer films.  When we correct box office receipts for the effects of inflation . . . [t]he number 1 movie is now *Gone With the Wind* ($1,604 million) . . . .  *Avatar* falls to number 14.").

3

quest for unobtanium, the corporation deploys avatars, one of whom is controlled by the protagonist Jake Sully, to explore Pandora while blending in with the Na'vi.  (*Id.* at 3-4).

The details of Jake's adventures are ultimately irrelevant to the present dispute, so there is no need to spoil the plot of the movie for someone who has not seen it.  Instead, what is relevant is the film's *mise-en-scène*: Pandora's "fully envisioned ecosystem" of brightly colored and luminescent flora and fauna.  (*Id.* at 5).  Defendants describe the biosphere as "simultaneously fantastic yet realistically[ ]rendered based on what appears in nature and grounded in scientific feasibility."  (*Id.*).  Plaintiff, for his part, alleges that he sees avatars of his own work in *Avatar*'s biosphere.  The Amended Complaint does not specify which parts of the film constitute "[t]he infringing portions of *Avatar*."  (Am. Compl. ¶ 19).  But from a review of the parties' memoranda of law and the artwork that Plaintiff alleges to have been infringed (*id.* ¶ 21; *see supra* note 1), it appears that there are five aspects of *Avatar*'s ecosystem in dispute: (1) the "Hallelujah Mountains" (2) the "Stone Arches"; (3) the "Hometree"; (4) the "Tree of Voices" and the "Tree of Souls"; and (5) some Pandoran wildlife, including "banshees," "thanators," "wolf-like predators," "six-legged horse-like creatures," and "woodsprites, small, bioluminescent jelly-fishlike creatures."  (Defs.' Mem. 5-6).[4]

---

[4] For ease of reference, the Court attaches an Appendix to this Opinion and Order that includes some of the images at issue, taken from the Declaration of William Roger Dean (Docket No. 29) ("Dean Decl"), Ex. 7.  By necessity (that is, there being no way to include a movie in the Appendix, let alone the Federal Supplement), the images from *Avatar* are static depictions of individual frames or portions thereof.  Moreover, as discussed below, some of the images have been cropped or otherwise manipulated by Plaintiff.  The Appendix notwithstanding, the Court's analysis and conclusions are based on a comparison of Plaintiff's artworks and the original movie as a whole — as the substantial-similarity inquiry requires.  To put the images in the Appendix into the necessary, broader context of the *Avatar* film, see the Declaration of Jonathan Neil Strauss in Further Support Defendants' Motion To Dismiss (Docket No. 34), Ex. 1.

**LEGAL STANDARDS**

A motion pursuant to Rule 12(b)(6) challenges the sufficiency of the allegations in the complaint. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive the motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The relevant legal standards here are well established. The Copyright Act gives owners of a copyright certain "exclusive rights," 17 U.S.C. § 106, to protect "original works of authorship," 17 U.S.C. § 102(a). Significantly, however, not all elements of a work are eligible for copyright protection. For example, a copyright "does not protect an idea, but only the *expression* of an idea." *Kregos v. Associated Press*, 3 F.3d 656, 663 (2d Cir. 1993); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea[,] . . . concept, [or] principle,  . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work."); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985) ("[N]o author may copyright . . . ideas."). Additionally, under the *scènes à faire* doctrine, protection does not extend to "sequences of events that necessarily result from the choice of a setting or situation," *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (internal quotation marks omitted), or "elements of an image that flow naturally and

necessarily from the choice of a given concept," *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 392 (S.D.N.Y. 2005). Likewise, public domain material — including flora, fauna, and other aspects of the natural world — is not protected. *See, e.g.*, *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 710 (2d Cir. 1992). Unprotected elements of a copyrighted work are "free for the taking and cannot be appropriated by a single author." *Id.*

Mindful of the foregoing, to prevail on a claim of copyright infringement, a plaintiff must establish that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the *protectible* elements of plaintiff's." *Peter F. Gaito Architecture*, 602 F.3d at 63 (emphasis added) (internal quotation marks omitted). As the Second Circuit has made clear, "[t]he standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Id.* at 66 (internal quotation marks and brackets omitted). "On occasion," however, the Court of Appeals has "noted that when faced with works that have both protectible and unprotectible elements," the analysis "must be more discerning," and that a court "must attempt to extract the unprotectible elements from . . . consideration and ask whether the protectible elements, standing alone, are substantially similar." *Id.* (internal quotation marks and citations omitted); *accord DiTocco v. Riordan*, 496 F. App'x 126, 128 (2d Cir. 2012) (summary order); *see also, e.g.*, *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 514 (2d Cir. 1991) ("What must be shown is substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work].").

Under either test, however, a court must not "dissect the works into their separate components, and compare only those elements which are in themselves copyrightable." *Peter F.*

*Gaito Architecture*, 602 F.3d at 66 (internal quotation marks and alteration omitted).  Instead, it must "compar[e] the contested design's total concept and overall feel with that of the allegedly infringed work as instructed by [its] good eyes and common sense."  *Id.* (internal quotation marks and citations omitted).  Nor may a court consider parts of a work in isolation — by, for example, viewing isolated screen shots from a film "in which camera angles, lighting, and focus are changing at a rate of [many] frames per second."  *Gordon v. McGinley*, No. 11-CV-1001 (RJS), 2011 WL 3648606, at *6 (S.D.N.Y. Aug. 18, 2011), *aff'd in relevant part by* 502 F. App'x 89 (2d Cir. 2012) (summary order).  "Such a scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another."  *Williams*, 84 F.3d at 590.  Finally, to the extent relevant here, a court must not "aggregate" a plaintiff's work, but must consider each allegedly infringed work independently.  *Kroencke v. Gen. Motors Corp.*, 270 F. Supp. 2d 441, 443-44 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 339 (2d Cir. 2004) (summary order).  Nothing in the Copyright Act or Second Circuit case law "supports the view that a plaintiff's entire *oeuvre*, or even an aggregated portion of it, may be used as the point of comparison where the works included therein bear little or no relation to one another beyond 'style.'"  *Id.* at 444; *see also, e.g.*, *Judith Ripka Designs, Ltd. v. Preville*, 935 F. Supp. 237, 248 (S.D.N.Y. 1996) ("The copyright laws do not protect styles, but only particular original designs." (citing *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960))).

On a motion to dismiss, a district court may assume that "actual copying" occurred and proceed directly to the question of "substantial similarity."  *See Peter F. Gaito Architecture*, 602 F.3d at 63-64.  Where, as here, the works in question are either attached to the complaint or incorporated by reference therein, "it is entirely appropriate for the district court to consider the

similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Id.* at 64; *see id.* ("When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works." (internal quotation marks omitted)).  If, in making that evaluation, the court determines either that "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work" or that "no reasonable jury, properly instructed, could find that the two works are substantially similar," it may dismiss the claim on the ground that "the plaintiff's complaint, together with the works incorporated therein, do not 'plausibly give rise to an entitlement of relief.'"  *Id.* at 63-64 (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

In light of the foregoing standards, several of Plaintiff's efforts to show substantial similarity are plainly misguided.  First, in support of his opposition to Defendants' motion, Plaintiff presents a side-by-side comparison of his "images" and "*Avatar* images."  (Dean Decl., Ex. 7).  Many of the "*Avatar* images" he includes, however, are not from the film itself, but are taken from books about or derived from *Avatar* (including, for example, *The Making of Avatar* and *The Art of Avatar*).  By Plaintiff's own admission, those books are "not part of the claims in this case." (Dean Decl. ¶ 7).  It follows that they are irrelevant to the substantial similarity inquiry.  *Cf., e.g.*, *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 204 n.4 (S.D.N.Y. 2010) ("[B]ecause the Court considers the works as they were presented to the public, earlier drafts of a book, manuscript, or screenplay are irrelevant." (internal quotation marks and citation omitted)); *Flaherty v. Filardi*, No. 03-CV-2167 (LTS) (HBP), 2009 WL 749570, at *11 & n.4 (S.D.N.Y. Mar. 20, 2009) (similar, citing cases).  Second, to the extent that he includes

8

images from the film itself, not only does he take them out of context — presenting single static frames from scenes comprised of hundreds if not thousands of frames, in which camera angles, lighting, and focus rapidly change — but he also manipulates the images (not to mention his own images) by cropping them, rotating them, and the like.  Such tactics cannot be used to bolster an infringement claim.  *See, e.g.*, *Gordon*, 2011 WL 3648606, at *4 (rejecting the plaintiff's efforts to manipulate the images at issue by, among other things, cropping and rotating them "in order to bolster her infringement claims" and "obscure . . . differences" between the works).

   Third, in support of his arguments, Plaintiff submits various articles and anonymous Internet postings commenting on perceived similarities between *Avatar* and Plaintiff's artwork and speculating about whether Plaintiff's artwork was an inspiration for Pandora's landscapes.  (*See* Dean Decl., Exs. 1, 2A, 2B, 2C, 2D, 2E, 2F).  (Notably, Plaintiff's artwork is not the only work listed as possible inspiration for Defendants.  One article cites *Fraggle Rock*, *Return of the Jedi*, and *Blue Man Group* as other possible sources of inspiration.  (Dean Decl., Ex. 2B).)  It is well established, however, that the opinions of third parties — even experts — are "irrelevant to a determination of substantial similarity."  *Sheldon Abend Revocable Trust*, 748 F. Supp. 2d at 204 n.4 (citing cases); *accord Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585, 597 (S.D.N.Y. 2009), *aff'd*, 351 F. App'x 516 (2d Cir. 2009) (summary order).  In fact, the commentary submitted by Plaintiff is irrelevant in two senses.  First, "comparison of secondary or descriptive materials cannot prove substantial similarity under the copyright laws because the works themselves, not descriptions or impressions of them, are the real test for claims of infringement."  *Walker v. Time Life Films*, 784 F.2d 44, 51 (2d Cir. 1986) (citation omitted).  Second, the commentary is limited to whether *Avatar* is "ultimately derivative and unoriginal in an artistic sense," which is both "something which the Court has neither the expertise nor inclination to

9

pronounce upon" and "beside the point." *Gordon*, 2011 WL 3648606, at *7. Instead, the question is whether, *within the meaning of copyright law* and considering the works *as a whole*, "a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture*, 602 F.3d at 63 (internal quotation marks omitted).

The answer to that question is plainly no. The Court begins with what may be Plaintiff's most compelling argument for substantial similarity: the comparison between *Avatar*'s "Hallelujah Mountains" and Plaintiff's works featuring floating islands — including *Floating Islands*, *The 1st of April*, and *Stairway to Heaven*. The works are indisputably similar insofar as they present the natural world in a fantastical way by depicting airborne land masses. But Plaintiff does not have a monopoly on the idea of floating or airborne land, an idea that has been around since at least 1726, when Jonathan Swift published his classic *Gulliver's Travels*. *See also, e.g.*, LED ZEPPELIN, *Stairway to Heaven*, *on* LED ZEPPELIN IV (Atlantic Records 1971). Suspending a landmass is a predictable — if not common — way to make a vista more sweeping, breathtaking, and fantastical, and is plainly subject to both the principle that ideas are not protected and the doctrine of *scènes à faire*. Put simply, Plaintiff cannot copyright the idea of levitation, a trope often used to suggest a magical or fantastic realm, *cf. Williams*, 84 F.3d at 589 ("[P]lacing dinosaurs on a prehistoric island far from the mainland amounts to no more than a *scene a faire* in a dinosaur adventure story."), and a common feature of films utilizing three-dimensional technology, such as *Avatar*, *cf.* BERNARD MENDIBURU, 3D MOVIE MAKING: STEREOSCOPIC DIGITAL CINEMA FROM SCRIPT TO SCREEN 20 (2009) ("[I]n a 3D movie, objects are seen as floating around the space, but are actually shown and looked at on the screen.").

There are some other similarities between *Avatar*'s "Hallelujah Mountains" and Plaintiff's works, including the shapes of some of the land masses and features such foliage and

waterfalls.  To the extent that those elements appear in nature, however, they are in the public domain and "free for the taking."  *Computer Assocs.*, 982 F.2d at 710; *see also, e.g.*, *Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005) ("To the extent a photograph captures the characteristics of an object as it occurs in nature, these characteristics are not protectible.").  And to the extent that those elements are protectible, any similarities between Defendants' and Plaintiff's works are overwhelmed by their differences.  For example, the "Hallelujah Mountains" are depicted, in photorealistic detail, as massive floating islands of different shapes and sizes densely blanketed with plants, trees, and other vegetation.  By contrast, Plaintiff's works are more stylized and fantastical, featuring smaller, egg-shaped islands — more akin to large boulders than mountains — with little or no vegetation other than a prominent, solitary tree almost as large as the island itself.

Additionally, Plaintiff's *Stairway to Heaven* depicts a series of seemingly unconnected orange and stone-like rocks, more or less the same size, ascending to a single tree, all against a black backdrop.  By contrast, the allegedly infringing image in *Avatar* features larger, more realistic landmasses, decreasing in size and covered in vegetation, against a backdrop of other mountains.  (*Compare, e.g.*, Dean Decl., Ex. 7, at 12, *with Avatar* at 2:05:25). When one adds to those differences the fact that the "Hallelujah Mountains" appear in "a wholly dissimilar and dynamic medium, in which camera angles, lighting, and focus are changing" rapidly, *Gordon*, 2011 WL 3648606, at *6, no reasonable jury could find that Defendants' and Plaintiff's works are substantially similar, *see, e.g.*, *Warner Bros., Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 241 (2d Cir. 1983) (noting that "numerous differences" between works "tend to undercut substantial similarity" (internal quotation marks omitted)); *see also* 4 NIMMER ON COPYRIGHT § 13.03[B][1][a] ("If the points of dissimilarity not only exceed the points of similarity, but

11

indicate that the remaining points of similarity are, within the context of plaintiff's work, of minimal importance, either quantitatively or qualitatively, then no infringement results.").

The Court need not devote as much discussion to Plaintiff's other allegations of substantial similarity, as they suffer from at least the same fundamental deficiencies.  Many, if not most, of the alleged similarities between Plaintiff's and Defendants' works relate to elements that are unprotected, such as ideas (for example, flying dragon-like creatures, which are a staple of fantasy fiction and films, *see, e.g.*, *Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004)) or features taken from nature (for example, stone arches, acacia trees and willow trees, and colorful amphibians and reptiles).  (*See generally* Dean Decl., Ex. 7).  And to the extent that Plaintiff's works are protected, the differences between each of those works and *Avatar* overwhelm any superficial similarity.  For example, whereas the stone arches in most of Plaintiff's artworks are relatively smooth and set in barren land or seascapes, the stone arches in *Avatar* are jagged and uneven, are overgrown with trees and moss, and are set in a photorealistic ecosystem of mountains and valleys.  (*Compare, e.g.*, Dean Decl., Ex. 7, at 18, 20, 24, 26, *with Avatar* at 2:14:18-2:14:40, 2:52:52-2:53:02, 3:05:04-3:05:25, 3:19:30-3:19:36).  Similarly, the solitary, stone-like, flat-topped structure that resembles the shape of an acacia tree in the background of Plaintiff's work *Yessongs—Pathways* bears little or no similarity to Defendants' "Hometree," which is depicted in *Avatar* as an enormous tree, with long branches, green leaves, and vines, in a lush forest setting.  (*Compare, e.g.*, Dean Decl., Ex. 7, at 28, 30, 32, *with Avatar* at 1:43:30-1:43:35, 1:53:58-1:54:26).

So too, *Avatar*'s "Tree of Souls" and "Tree of Voices" — which resemble willow trees, but have "long, thin, bioluminescent tendrils that hang straight down" (Defs.' Mem. 22) — have a markedly different aesthetic from the willow-type trees depicted in Plaintiff's *Floating Jungle*,

12

which are suspended in the air and covered with a moss-like overgrowth.  (*Compare, e.g.*, Dean Decl., Ex. 7, at 34, *with Avatar* at 2:04:02-2:04:18, 2:14:39-2:14:48, 2:21:30-2:23:00, 2:58:31-3:01:00, 3:08:05-3:09:52).  Finally, there are virtually no similarities between the flying dragon depicted in Plaintiff's *Morning Dragon* and *Avatar*'s "banshees" (apart from all being flying, colorful reptiles — which is obviously unprotectible).  (*Compare, e.g.*, Dean Decl., Ex. 7, at 36, *with Avatar* at 1:58:13-1:59:50, 2:08:16-2:12:25).  Although Plaintiff contends that the banshees' antennae (through which the Na'vi connect to the creatures using a neural interface) infringe "the original antennae on the Morning Dragon," a close look at Plaintiff's work reveals that his dragon does not even have antennae — it has tails.  (Pl.'s Mem. 18; Reply Mem. Law Further Supp. Defs.' Mot. To Dismiss (Docket No. 33) 17-18).

In short, limiting the analysis to the protectible elements of Plaintiff's works and reviewing the relevant works as a whole, with "good eyes and common sense," the Court "confidently conclude[s] that no average lay observer would recognize" *Avatar* "as having been appropriated from the copyrighted work."  *Peter F. Gaito Architecture*, 602 F.3d at 66-67 (internal quotation marks omitted).  The commentators cited by Plaintiff may well be correct that Defendants — wittingly or unwittingly — took some inspiration from Plaintiff, or even copied elements of his works in making their film.  But many Hollywood movies take their inspiration from other movies or works — or go even further — without running afoul of the Copyright Act.  *Cf.* Rob Payne, *Same? Same. Same! Pitting Hollywood's 20 Most Derivative Movies Against Each Other*, PAJIBA (July 2, 2013), http://www.pajiba.com/seriously_random_lists/pitting-hollywoods-20-most-derivative-movies-against-each-other-.php.  And, in any event, the law is clear that "not all copying results in copyright infringement."  *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001).  In the final analysis, to the extent Plaintiff believes that Defendants

13

borrowed from his work without permission, his "remedy . . . lies in the court of public or expert opinion and not the federal district court." *Gordon*, 2011 WL 3648606, at \*6.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED, and the Amended Complaint is dismissed in its entirety.

The Clerk of Court is directed to terminate Docket No. 18 and to close the case.

SO ORDERED.

Date: September 17, 2014
New York, New York

/s/ JESSE M. FURMAN
United States District Judge

**APPENDIX**



*Compare April 1st*, *supra* note 1, *with Avatar* at 1:55:57:09 (the "Hallelujah Mountains").
*See generally* Dean Decl., Ex. 7, at 4-11.



*Compare Stairway to Heaven*, *supra* note 1, *with Avatar* at 2:05:24:12 (the "Hallelujah Mountains").
*See generally* Dean Decl., Ex. 7, at 12-13.



*Compare, e.g.*, *Arches Mist*, *supra* note 1, *with Avatar* at 2:14:25:16 ("Stone Arches").
*See generally* Dean Decl., Ex. 7, at 18-27.



*Compare Yessongs—Pathways*, *supra* note 1, *with Avatar* at 1:24:18:16 ("Hometree").
*See generally* Dean Decl., Ex. 7, at 28-33.



*Compare Floating Jungle*, *supra* note 1, *with Avatar* at 3:33:39:09 ("Tree of Voices").
*See generally* Dean Decl., Ex. 7, at 34-35



*Compare Morning Dragon*, *supra* note 1, *with Avatar* at 1:52:22:09 ("Banshee").
*See generally* Dean Decl., Ex. 7, at 36-37.